UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| **David Roberts, III,** ) | Civil Action No.: 0:18-2426-JMC |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Auto Pro's Sales of Rock Hill Inc.,** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, David Roberts, III, for actual and statutory damages, punitive damages, treble damages, and attorneys' fees and costs for Defendant's violations of the Truth In Lending Act, 15 U.S.C. §1643, *et seq*, the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq*., the South Carolina Dealer's Act, S.C. Code Ann. §56-15-10, *et. seq*.; and South Carolina common law as set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1640(e) and 28 U.S.C. §1331 and §1367.

## PARTIES

3. Plaintiff, David Roberts, III, is a resident and citizen of the State of North Carolina, Gaston County, and is over the age of twenty-one (21) years.

4. Defendant Auto Pro's Sales of Rock Hill, Inc.. (referred to hereinafter as "Auto Pro's") is a South Carolina corporation that may be served with process through its registered agent,

Darrell Burkett, 665 N. Anderson Rd., Rock Hill, SC 29730. At all times relevant herein, Defendant was doing business within the state of South Carolina with consumers from both North Carolina and South Carolina.

**FACTUAL ALLEGATIONS**

5. On or about May 3, 2018, Plaintiff purchased a 2009 Ford Flex from Defendant. Plaintiff elected to pay for this vehicle by way of monthly payments to Defendant. The parties agreed to a total cash price amount of $3,250.00, payable by 21 "bi-weekly" payments of $150.00 and a final payment of $100.00 on March 7, 2019. Further, Defendants accepted Plaintiff's 2000 Ford Mustang by way of a trade towards the purchase of the Ford Flex and stated that it would pay off the $1,020.00 title loan currently on the Mustang.

6. Plaintiff signed a Retail Installment Contract & Security Agreement ("RISC") with TILA disclosures that reflected the above bi-weekly payments and set forth a 0.00% interest rate and $0.00 finance charge. The RISC did not set forth any details, or make any mention of, Plaintiff's traded in vehicle. A copy of the RISC is attached hereto as Exhibit "A".

7. The Kelley Blue Book value of a 2009 Ford Flex in good condition is between $3,200 and $5,200. Therefore, the amount sought by Defendant was within the trade-in range and, therefore, attractive to Plaintiff as a purchase.

8. Plaintiff took possession of the Ford Flex and drove it off the lot. Defendant made known to Plaintiff that he would have to make his car payments to Defendant by way of cash or money order.

9. When his first payment came due, Plaintiff returned to Defendant's lot and made his first $150.00 payment. Defendant provided Plaintiff a receipt which indicated that the total

amount financed was $7,500.00.

10. Plaintiff immediately challenged this amount, stating that it was more than double what he had agreed to pay and that he had the paperwork setting forth the original payment amount. Defendant stated that the $7,500.00 was the amount that Plaintiff had agreed to and printed out a "new contract" with a total financed amount of $7,500.00, requiring fifty $150.00 bi-weekly payments. Notably, the print out of the contract with this clearly false amount not only did not include Plaintiff's signature, it did not even include a signature line. A copy of said contract is attached hereto as Exhibit "B".

11. Plaintiff requested a complete payoff amount on the loan, showing the amount owed, and Defendant refused to provide same.

12. Plaintiff is now stuck with a vehicle which Defendant is purporting he owes more than $7,000.00 on and is forced to continue to make payments so as to avoid damaging his credit. Plaintiff would not have purchased the 2009 Ford Flex at $7,500.00 as such an amount was clearly an overprice based on the value of the car. Now, Plaintiff is being held hostage by Defendant and forced to continue to make payments on a vehicle or else lose his only means of transportation and have his credit destroyed.

13. Plaintiff purchased the 2009 Ford Flex solely based on the $3,250.00 price. Had this price not been provided to Plaintiff, he would have purchased a different vehicle. It is Defendant's practice to advertise, and in fact sell, vehicles for a lower price and then falsify documentation in order to increase its profit margin, or, in the alternative, get the vehicle back after a number of payments have been made to then repeat its scheme.

14. Plaintiff relied upon the disclosures made in RISC in making his decision to purchase the

Ford Flex. It is only due to the false disclosures made by Defendant that Plaintiff purchased the 2009 Ford Flex.

## COUNT ONE
### Violation of the Truth in Lending Act

15. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 5 through 14 as if set forth fully herein.

16. For closed end transactions, such as the one the basis for this action, a creditor is required to make certain disclosures pursuant to the Truth in Lending Act, 15 U.S.C. §1601(a); 15 U.S.C. §1638.

17. One such disclosure is the amount financed. 15 U.S.C. §1638(a)(2).

18. Defendant violated the Truth in Lending Act by providing paperwork to Plaintiff which greatly understated the amount purported, by Defendant, to have been financed. Defendant provided paperwork to Plaintiff which stated that the amount financed was $3,250.00 and then later produced a separate contract which stated the amount financed was $7,500.00.

19. Due to Defendant's violation of the Truth in Lending Act, Plaintiff has suffered worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish. The violations of the Truth in Lending Act by Defendant entitle Plaintiff to an award of his actual damages as well as reasonable attorneys' fees, which Plaintiff hereby seeks pursuant to 15 U.S.C. §1640.

20. Additionally, as the $4,250.00 difference between the original contract and the fraudulent contract is a de facto finance charge, Plaintiff seeks statutory damages of double the finance charge as provided by statute pursuant to 15 U.S.C. 1640.

## COUNT TWO
### Violation of the South Carolina Unfair Trade Practices Act

21. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 5 through 20 as if set forth fully herein.

22. Defendant's conduct amounts to unfair methods of competition and unfair and deceptive acts or practices in the conduct of trade or commerce as defined by South Carolina Code §39-5-10, *et. seq.* (As amended). Defendant knowingly, willfully, unfairly, deceptively, and/or negligently engaged in unfair and deceptive practices, as described herein.

23. Specifically, Defendant intentionally induced Plaintiff into purchasing a vehicle by way of a fraudulent purchase price and after convincing Plaintiff to purchase the vehicle, Defendant then created a fraudulent document in order to attempt to box Plaintiff into paying more than he had originally agreed to pay.

24. Plaintiff further alleges that the actions of the Defendant have a real and substantial potential for repetition and are a threat to the public interest. It is Defendant's common practice to entice consumers to purchase vehicles at a set forth lower price and then, after the fact, fraudulently create documentation which purports to commit the consumer to paying a higher price. Once consumer refuses to make these higher payments, as Defendant is the finance company, Defendant then seeks to repossess the vehicle and commit the same scheme on the next unwilling consumer.

25. The Plaintiff has suffered an ascertainable loss due to the unlawful actions of the Defendant and is entitled, under § 39-5-140, to recover actual damages in an amount to be proven at trial, treble said actual damages for Defendant's knowing and willful behavior, and an award

of reasonable attorney's fees and costs.

26. Defendant's use or employment of unfair or deceptive methods, acts, and practices caused Plaintiff to suffer worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish. Additionally, Plaintiff suffered out of pocket losses, including but not limited to attorneys' fees and costs. Defendant's use or employment of unfair or deceptive methods, acts, and practices was willful, wanton, and knowing. Therefore, Plaintiff seeks an award of three (3) times the actual damages sustained. Plaintiff is also entitled to attorneys' fees and costs.

## COUNT THREE
### Violation of the South Carolina Dealer's Act

27. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 5 through 26 as if set forth fully herein.

28. Defendant is a "dealer" as that term is defined by S.C. Code Ann. §56-15-10(h).

29. Defendant has engaged in conduct that is unfair and deceptive. Specifically, the actions complained of herein are unconscionable and have caused damages to Plaintiff.

30. Defendant acted in bad faith and fraudulently when it created a false contract after Plaintiff's purchase of the vehicle that is the subject of this action and then sought to require Plaintiff to honor said contract.

31. Defendant's actions are unlawful pursuant to S.C. Code Ann. §56-15-30.

32. Due to Defendant's violations of S.C. Code Ann. §56-15-10, et seq., Plaintiff is entitled to double his actual damages, as well as attorney's fees and costs. These actual damages include, but are not limited to, the amount of the loss of his trade, all payments on the car,

physical sickness, loss of sleep, worry, aggravation, stress, humiliation, anxiety, anger, fear, frustration, inconvenience, and mental suffering.

33. Due to the willful and malicious nature of Defendant's actions, Plaintiff is also entitled to three times the actual damages award in punitive damages and hereby requests same.

### COUNT FOUR
### Fraud

34. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 5 through 33 as if set forth fully herein.

35. Defendant represented to Plaintiff that the purchase price of his vehicle was $3,250.00, as evidenced by the contract signed by Plaintiff.

36. Defendant's representations were false. Defendant sought $7,500.00 for the vehicle as evidenced by the fraudulent, false contract created by Defendant after the purchase of the vehicle and upon which Defendant sought payment.

37. Defendant's representations to Plaintiff were material in this matter. Plaintiff only purchased the vehicle as it was a good, reasonable price for a car of its age and condition. Plaintiff would not have paid the $7,500.00 sought by Defendant had same been disclosed to him at the time of purchase.

38. Defendant knew or should have known its representations were false and Defendant made same with reckless disregard of said representations truth or falsity.

39. Defendant intended for Plaintiff to rely upon its representations. Defendant made the representations set forth herein in order to deceive Plaintiff into purchasing the vehicle.

40. Plaintiff had a right to rely upon the representations and in fact did rely upon said

representations to his detriment.

41. Plaintiff did not know said representations were false and relied upon said representations.

42. As a direct and proximate result of Defendant's fraudulent representations, Plaintiff has been actually damaged. Plaintiff suffered out of pocket losses, suffered worry, humiliation, fear, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish.

43. Defendant's conduct was willful, intentional, with malice towards Plaintiff, and with reckless disregard for the rights of Plaintiff. Therefore, Plaintiff seeks an award of punitive damages.

## COUNT FIVE
### Negligent Training and Supervision

44. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 5 through 43 as if set forth fully herein.

45. Defendant owed the Plaintiff a duty to properly train and supervise its employees to ensure compliance with federal and state laws. Defendants knew or should have known of their inadequate training and supervision. If Defendants had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiff would not have occurred.

46. Defendant knew or should have known that the conduct of its employees, agents, and/or assigns was improper and in violation of federal and state law.

47. Defendant breached its duty to Plaintiff by negligently failing to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

48. As a result of the Defendant's negligence, the Plaintiff suffered out of pockets losses, worry, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental

suffering, pain, and anguish.

## COUNT SIX
### Reckless and Wanton Training and Supervision

49. Plaintiff hereby adopts, to the extent same are consistent with the allegations contained herein, all of the allegations set forth in paragraphs 5 through 48 as if set forth fully herein.

50. Defendant knew or should have known of its inadequate training and supervision. If Defendant had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiff would not have occurred.

51. Defendant knew or should have known that the conduct of its employees, agents, and/or assigns was improper and in violation of South Carolina law.

52. Defendant recklessly and wantonly failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

53. As a result of the Defendant's recklessness and wantonness, the Plaintiff suffered out of pocket losses, worry, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. For actual damages, statutory damages, and attorneys' fees and costs, pursuant to 15 U.S.C. §1640, for Defendant's violations of the Truth in Lending Act;

B. For actual damages, trebled due to Defendant's willfulness, as well as attorneys' fees

and costs, pursuant to S.C. Code Ann. §39-5-140, for Defendant's violations of the South Carolina Unfair Trade Practices Act;

C. For two times Plaintiff's actual damages, three times Plaintiff's actual damage award as punitive damages, as well as attorney's fees and costs, for Defendant's violations of the South Carolina Dealer's Act, S.C. Code Ann. §56-15-100;

D. For actual and compensatory damages for Defendant's violation of South Carolina common law as set forth herein;

E. For punitive damages, where available, for Defendant's violations of South Carolina common law as set forth herein;

F. For this matter to be heard by a jury; and

G. For such other and further relief as this Court deems necessary and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed ID No 10323

/s/ William K. Geddings
William K. Geddings, SC Bar No. 12584
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com
will@hayscauley.com
Attorneys for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ William K. Geddings
Of Counsel

Page 10 of 11

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL**

Auto Pro's Sales of Rock Hill, Inc.
c/o Darrell Burkett - Registered Agent
665 N. Anderson Rd.
Rock Hill, SC 29730